MATTER OF CRUZ-GASTELUM

In Deportation Proceedings

A-13110444

*Decided by Board April 26, 1968*

In the absence of a record of his claimed admission, a presumption of lawful admission for permanent residence pursuant to 8 CFR 101.1(j) is not available to respondent, who claims to have been admitted erroneously as a United States citizen in 1948, notwithstanding parole and other evidence establishing a strong probability of entry as claimed.

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)] —, Convicted of crime involving moral turpitude within five years after entry.

This case comes forward on certification from the special inquiry officer, who found the respondent deportable as charged, ineligible for any form of discretionary relief, and ordered him deported to the Republic of Mexico.

Respondent is a 24-year-old single male alien, native and citizen of Mexico, who was admitted to the United States for permanent residence, in possession of a nonquota immigrant visa, on August 16, 1962, at San Ysidro, California. On October 25, 1965 he was convicted, upon his plea of guilty, in the court of the State of California, of the crime of burglary, second degree, in violation of section 459 of the Penal Code of California, committed on October 24, 1965. He was thereafter sentenced to imprisonment for the term provided by law (not less than one year and not more than fifteen years), which in his case was set at two years and six months. The crime of burglary in the second degree, in violation of section 459 of the Penal Code of the State of California, has been held to be a crime involving moral turpitude; see *Matter of Z—,* 5 I. & N. Dec. 383.

At the initial deportation proceedings held in 1966, at which respondent chose to proceed without counsel, he conceded that the conviction record related to him, and that he had come to the United States with an immigrant visa on the date specified, but contended that

he had been a lawful permanent resident of the United States for many years prior to August 1962. It was brought out at the hearing that respondent's father was a native born citizen of the United States who had resided in this country for slightly more than 20 years prior to respondent's birth, but that his residence was two and one-half months short of the five years after attaining the age of sixteen that would have been necessary for respondent to have acquired citizenship at birth abroad under the provisions of section 201(g) of the Nationality Act of 1940. There was no further exploration of respondent's claim of permanent resident status prior to August 1962. The special inquiry officer found respondent to be an alien, deportable as charged, holding that the brief absence from the United States in August, 1962 (which respondent testified was for the sole purpose of picking up the visa and was of less than a day's duration) did not come within the ruling in *Rosenberg v. Fleuti*, 374 U.S. 449, because it was not until the return from that absence that respondent was first admitted to the United States for permanent residence.

At the close of the hearing, respondent was asked whether he wished to appeal from the special inquiry officer's decision, and he replied that he would accept it. Two months later, however, he wrote a letter to the Immigration and Naturalization Service, stating that he felt he had a basis on which to appeal. He wrote that he had first come to the United States with his father and had been admitted as the son of a citizen upon presentation of his birth certificate; that he had never thereafter returned to Mexico to live; that he had registered for the draft in 1961 and shown proof of his legal status; and that the crime had not been committed within five years after his entry because he had been residing in the United States for about 18 years at the time of his conviction. When this letter was brought to the special inquiry officer's attention some months later, he regarded it as a motion to reopen or reconsider, and gave the Service an opportunity to submit a brief in opposition, which it chose not to do. The special inquiry officer then reviewed the case, held that nothing in the motion warranted a change in his earlier decision, and denied the motion.

Respondent appealed the denial to the Board. Upon consideration of all of the factors in this case, the Board sustained the appeal and remanded the case for exploration of the possibility that respondent might come within the provisions of section 101.1(j) of Title 8, CFR, and be entitled to the benefit of the presumption that he had been lawfully admitted for permanent residence in 1948, if a record of his admission as the child of a citizen existed. The Board also pointed out that if it should be found respondent was entitled to the presumption of lawful admission provided for in section 101.1(j), then a departure

705

made on the basis of a legal or factual misapprehension as to the
need for a visa (the sole reason for the trip to Mexico),[1] might possi-
bly bring the return within the exception set forth in *Rosenberg* v.
*Fleuti, supra.*

A reopened hearing was held on April 10, 1967. Respondent, who was
free on parole, still chose to proceed without counsel. At that hearing,
respondent's father testified not only as to his own citizenship, but as
to the circumstances surrounding his bringing of respondent to the
United States in the early part of 1948, and respondent's admission as
the citizen son of a citizen father, after presentation of birth certifi-
cates and other requested documentation.

The special inquiry officer has stated:

I believe that the respondent's father testified truthfully that he and the
respondent were inspected and were admitted to the United States as citizens
at the time of their entry in 1948 * * *. (Decision, p. 9)

Exhibit R-14 establishes that respondent was definitely in the
United States in 1948; it is an extract from the official records of the
Los Angeles City Board of Education showing that he attended kin-
dergarten at the Twenty-Eighth Street School in Los Angeles from
September 13, 1948 to January 24, 1949. The special inquiry officer has
further held that there is no evidence that fraud or misrepresentation
was practiced in connection with respondent's admission into the
United States at that time, and that although neither he nor his father
was in possession of a United States passport, it would not have been
required of them as United States citizens coming from Mexico. How-
ever, no record of respondent's admission as a citizen, in or about 1948
or at any time, can be found (see Ex. R-1), the only admission record
pertaining to him being the one showing his entry on August 16, 1962
in possession of the nonquota immigrant visa he left the country to
obtain (see Ex. R-2).

8 CFR 101.1 provides:

*Presumption of lawful admission.* A member of the following classes shall
be presumed to have been lawfully admitted for permanent residence even though
a record of his admission cannot be found, *except as otherwise provided in this
section,* unless he abandoned his lawful permanent resident status or subse-

---

[1] Respondent and two sisters applied for certificates of citizenship in 1961, and
it was during the course of processing of these applications that they were
advised they had not become citizens at birth because of the insufficiency in
their father's residence. They were told that because they had not been entitled
to enter as citizens, and had never entered as immigrants, they were in the
United States illegally, and were advised to apply for immigrant visas at a
Consulate in Mexico, which they did. It appears that this advice was given to
them by an officer or officers of the Immigration and Naturalization Service.

quently lost that status by operation of law: * * *. (Textual emphasis supplied.)

Although seven of the ten subdivisions of section 101.1 do not require that there be a record of admission, subsection (j), which covers respondent's situation, is one in which it is "otherwise provided." That subsection, in pertinent part, reads as follows:

*Erroneous admission as United States citizens or as children of citizens.* (1) (i) *An alien for whom there exists a record of admission prior to September 11, 1957, as a United States citizen* who establishes that at the time of such admission he was the child of a United States citizen parent; he was erroneously issued a United States passport or included in the United States passport of his citizen parent accompanying him or to whom he was destined; no fraud or misrepresentation was practiced by him in the issuance of the passport or in gaining admission; he was otherwise admissible at the time of entry except for failure to meet visa or passport requirements; and he has maintained a residence in the United States since the date of admission, or (ii) an alien who meets all of the foregoing requirements except that if he were, in fact, a citizen of the United States a passport would not have been required, or it had been individually waived, and was erroneously admitted as a United States citizen by a Service officer. * * *" (Textual emphasis supplied.)

Thus, as the special inquiry officer has pointed out, while respondent meets all of the other conditions, he cannot meet the initial requirement of the regulation, that he be "an alien for whom there exists a record of admission prior to September 11, 1957, as a United States citizen." It was the special inquiry officer's considered opinion that although he believed respondent's father's testimony that respondent was in fact admitted to the United States as a citizen in 1948, the testimony alone did not satisfy the requirement that there be a record of that admission. In this we must concur.

Although we are aware of no reported decisions squarely in point *Matter of C—*, 8 I. & N. Dec. 421, involving section 101.1(j) in an earlier form, is somewhat analogous to the situation before us. There a child born in Canada of a native born United States citizen mother (who did not have sufficient United States residence before the child's birth to enable the child to acquire citizenship at birth under the controlling law) and an alien father, was erroneously admitted as the citizen child of a United States citizen parent when brought to this country at 21 months of age. Neither she nor her mother had a United States passport; passports were not required of United States citizens seeking entry from Canada. The child, when applying for a certificate of citizenship, claimed that she had derived citizenship at the time of her father's naturalization in 1949, and was faced with the problem of establishing that she had been lawfully admitted for permanent residence, a prerequisite to citizenship derivation. It was her contention

707

that she was entitled to a presumption of such lawful admission under the provisions of 8 CFR 101.1(j), which did not then contain the exception to the passport requirement presently set forth in subsection (j)(1)(ii). This point was dealt with as follows:

Applicant meets all the requirements of this portion of the regulations except that she had not been erroneously issued a passport or included in the United States passport of her citizen mother. As pointed out above, neither the subject nor her mother had a passport. Absent this essential requirement, this portion of the regulations affords no benefit to the applicant.

It is urged that the passport requirement has no application to the instant case for the reason that passports were not required under the circumstances of the applicant's entry from Canada. This contention must be rejected. The language of Part 101.1(j) is clear and unambiguous. No exceptions or deviations are set forth. Literal compliance therewith is necessary in order that an entry may be presumed lawful for permanent residence.

We believe that the above rationale applies equally to the situation before us. Section 101.1(j), 8 CFR, is not merely a codification of previously existing law or interpretations; nor does the presumption therein set forth logically and automatically arise from the factual situation described. The presumption of lawful admission was created by the adoption of that regulation, which specifically sets forth the conditions that must be met before the presumption will come into being. These conditions, as has been pointed out, are clear and unambiguous; such exceptions as are permitted are specifically set forth in the text of the subsection itself.

In the case before us, in spite of the strongly established probability that respondent was admitted at the time and place and in the manner testified to by his father, he has been unable to present any documentary evidence of such admission, and search of the record centers of the Immigration and Naturalization Service has failed to uncover a record of his admission, prior to September 11, 1957, as a United States citizen. Thus, he cannot meet an essential condition of section 101.1(j), and cannot benefit from the presumption that he was lawfully admitted for permanent residence in 1948. He must, therefore, be deemed to have first entered for lawful permanent residence when he returned from Mexico with a nonquota immigrant visa on August 16, 1962.

In view of the above, we uphold as correct the finding of the special inquiry officer that respondent's return in 1962 was an entry, not excused by the exception set forth in *Rosenberg* v. *Fleuti*, *supra*. It must flow from this that respondent's conviction in October 1965, for a crime involving moral turpitude, for which he was sentenced to imprisonment for a term exceeding one year, was within five years of his entry, and he is therefore, deportable as charged.

The special inquiry officer, having in mind that respondent has lived in the United States continuously since the age of four, and has all of his family here, has carefully explored every possible type of discretionary relief from deportation, and has correctly concluded that respondent cannot qualify for any form of relief. He has accordingly ordered deportation to the Republic of Mexico. His decision must be affirmed.

**ORDER:** It is ordered that the decision heretofore entered herein by the special inquiry officer on April 10, 1967, and certified to this Board, be and the same is hereby in all respects affirmed.